CULPEPPER IP, PLLC
Kerry S. Culpepper, Bar No. 9837
75-5737 Kuakini Highway, Suite 104A
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 322-3389
Facsimile:    (808) 326-4800
E-Mail:        kculpepper@culpepperip.com

Attorney for Plaintiff
WWE Studios Finance Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| WWE Studios Finance Corp. | ) | **Case No.: 17-cv-165** |
|---|---|---|
| | ) | (Copyright) |
| Plaintiff, | ) | **COMPLAINT; EXHIBITS 1-2** |
| vs. | ) | |
| | ) | **(1) DIRECT COPYRIGHT** |
| Does 1 Through 16, | ) | **INFRINGEMENT** |
| | ) | |
| Defendants. | ) | **(2) CONTRIBUTORY** |
| | ) | **COPYRIGHT** |
| | ) | **INFRINGEMENT** |
| | ) | |
| | ) | |

## COMPLAINT

WWE Studios Finance Corp., files this Complaint against Defendants Does 1– 16 ("Defendants") and alleges as follows:

### I.  NATURE OF THE ACTION

1.  This matter arises under the United States Copyright Act of 1976, as

20-004A

amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2. The Plaintiff alleges that each Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.  JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) all or the majority of the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because all or the majority of the Defendants or Defendants' agents reside or may be found in this District.

20-004A

### III.   PARTIES

6.   The Plaintiff is a Corporation that is organized under the laws of the State of Delaware.

7.   The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant Does 1-16 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Each Defendant is known to the Plaintiff only by an Internet Protocol address ("IP address").  An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet. The ISP to which a Defendant subscribes can correlate a Defendant's IP address to a Defendant's true identity.  As shown on Exhibit "1" attached hereto, each of the Defendants' acts of copyright infringement occurred using an IP address traced to a physical address located within this District.  Plaintiff intends to subpoena the ISPs that issued the Defendants' IP addresses in order to learn the identity of the account holders for the IP addresses.  Often the account holder will be a proper Defendant in this case. However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of each Defendants' true names and permit the Plaintiff to amend this Complaint to state the same.  Plaintiff further believes that the information obtained in discovery may lead to the identification of

additional infringing parties to be added to this Complaint as defendants. Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

8. Plaintiff alleges on information and belief that each of the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff for the damages and relief sought herein.

### IV. JOINDER

9. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants; (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and (c) there are common questions of law and fact.

### V. FACTUAL BACKGROUND

#### A. *The Plaintiff Owns the Copyright to the Work*

10. The Plaintiff is the owner of the copyright in the Work. The Work is the subject of a copyright registration (Registration Number PAu 3-807-717), and this action is brought pursuant to 17 U.S.C. § 411. *See,* Exhibit "2".

### B. *The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright*

11. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

12. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

#### 1. *Each Defendant Installed a BitTorrent Client onto his or her Computer*

13. A BitTorrent "Client" is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

14. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the

BitTorrent protocol.

15. Each Defendant installed a BitTorrent Client onto his or her computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

16. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

17. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

18. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

19. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

20. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash

identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

21.   The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

22.   The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

23.   Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### *3. Torrent Sites*

24.   "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

25.   Upon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work.

### *4. Uploading and Downloading a Work Through a BitTorrent Swarm*

26.   Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file

7

20-004A

to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

27. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

28. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

29. In this way, all of the peers and seeders are working together in what is called a "swarm."

30. Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

31. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

32. Once a peer has downloaded the full file, the BitTorrent Client

reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

### 5. *The Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work*

33. The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

34. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

35. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: 53FB1F5227AF516DCDA02C0C651326D87D65C813 (the "Unique Hash Number").

36. The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show: (1) that each Defendant had copied a piece of the Plaintiff's copyrighted; (2) the Work identified by the Unique Hash Number; and, (3) that, therefore, each Defendant was

9

20-004A

part of the same series of transactions.

37. Through each of the transactions, each of the Defendants' computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

38. MEU's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

39. MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

## VI. FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

40. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

41. Plaintiff is the copyright owner of the Work which contains an original work of authorship.

42. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

43. The Plaintiff did not authorize, permit, or provide consent to the

20-004A

Defendants to copy, reproduce, redistribute, perform, or display its Work.

44. As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

45. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

46. By engaging in the infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

20-004A

47. The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

### VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

48. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

49. By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

50. The Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of each other Defendant.

51. Each Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original. Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendants' infringing activities.

52. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

53. By engaging in the contributory infringement alleged in this Complaint,

the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

54. The Plaintiff has suffered damages that were proximately caused by each of the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin each Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody, or control;

(C) order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages in the amount

20-004A

of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, April 10, 2017.

CULPEPPER IP, PLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
WWE Studios Finance Corp.

20-004A